[No. F004334. Fifth Dist. July 10, 1986.]

FRANK J. CICONE, Cross-complainant and Appellant, v.
URS CORPORATION et al., Cross-defendants and Respondents.

**COUNSEL**

Robert E. King, John D. Gibson and Arthur E. Schwimmer for Cross-complainant and Appellant.

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Robert E. Gooding, Jr., Ann Brick, Steven L. Mayer, David B. Goodwin, Borton, Petrini & Conron and Bob H. Joyce for Cross-defendants and Respondents.

**OPINION**

**MARTIN, J.**—This is an appeal from a judgment of dismissal following the sustaining of a general demurrer to an original cross-complaint without leave to amend.

On June 10, 1983, plaintiffs Gerald D. Lucas, Janice H. Lucas, and Lucas Family Trust filed a complaint alleging legal malpractice against defendants Frank J. Cicone and Frank J. Cicone Law Corporation et al. On October 25, 1983, defendants answered the complaint and filed a cross-complaint for comparative equitable indemnity, damages and punitive damages against URS Corporation, Arthur H. Stromberg and Richard W. Canady.

Cross-defendants filed general and special demurrers to the cross-complaint and a motion to strike the punitive damage allegations of the cross-complaint on December 23, 1983.

The demurrer and motion to strike were argued by counsel and submitted on January 26, 1984. On April 27, 1984, the lower court granted the general demurrer as to all causes of action without leave to amend. On June 26, 1984, the cross-complaint was dismissed with prejudice and judgment was entered in favor of the cross-defendants on June 27, 1984. This appeal followed.

FACTS

Cicone primarily challenges the trial court's decision to sustain the demurrers without leave to amend.

This case involves a legal malpractice suit brought against Cicone, an attorney, by plaintiffs, his former clients. Plaintiffs alleged Cicone was guilty of malpractice in conducting negotiations for the sale of plaintiffs' business, Advanced Production Service, Inc. (Advanced), to cross-defendant URS Corporation (URS). Cicone cross-complained against URS, its president and their attorney, Canady, for fraud, negligent misrepresentation, breach of good faith and fair dealing and equitable indemnity.

Cicone represents the factual allegations upon which the claims of fraud and deceit are based would be amended beyond those currently contained in the present cross-complaint to allege as follows:

In early September 1981, URS, through its president, Stromberg, reached a preliminary agreement with Gerald Lucas, President of Advanced, for URS to purchase from Lucas and his family the stock and assets of Advanced for $3.5 million cash. The final agreement was to be prepared by counsel for URS, and, at Stromberg's request, it was to be executed by the parties in as short a period of time as was reasonable. Lucas then engaged Cicone to represent him and his family in consummating the transaction.

Shortly after entering into the preliminary agreement, Advanced gave the accountants and other personnel of URS full access to the books and records

of Advanced, and the respective corporations' accountants and personnel were in frequent communication about Advanced's financial data.

Prior to October 13, 1981, URS presented Advanced with a proposed final agreement. The agreement provided in part that the sellers warranted the accuracy of an unaudited balance sheet of Advanced as of September 30, 1981, and included a warranty that Advanced had no liabilities other than those shown on the balance sheet. A number of other warranties in the agreement were stated to be made only to the best knowledge of sellers.

At a meeting on October 13, 1981, attended by Gerald Lucas, Cicone, Lucas' personal accountant R. Randall Richardson, Stromberg, and URS' attorney, Canady, Cicone advised Stromberg and Canady the sellers could not and would not guarantee the accuracy of the balance sheet. Canady, with Stromberg's tacit approval, replied the buyer understood and URS would deem the sellers to be guaranteeing the information in the balance sheet only to sellers' best knowledge.

Cicone would further allege that Canady's statement, made on behalf of Stromberg and URS, constituted a promise that URS would accept the balance sheet as correct only to the best of the sellers' knowledge. As Canady knew, that promise was false and was made without any intention of performing it, for cross-defendants intended to rely on the strict warranty contained in the written agreement. The promise was made for the purpose of inducing Cicone to rely on it and thereby to advise the sellers to follow through with the sale and to sign the final agreement. Cicone did rely on the promise and did advise the sellers to sign the agreement, and as a result the sellers did sign the agreement. Cicone's reliance on the promise was justifiable because the circumstances under which it was made gave him reason to believe it would be carried out and Cicone had no reason to disbelieve Canady.

The balance sheet was correct to the best of the sellers' knowledge. However, shortly after the transaction had been consummated, URS, through Stromberg, made a claim against the sellers based on a $200,000 understatement in the balance sheet of deferred tax liabilities, of which the sellers had been unaware. The sellers, through counsel other than Cicone, settled the claim without litigation for $125,000 and filed a legal malpractice action against Cicone. As a result, Cicone may incur liability to the sellers, and is required to defend a malpractice action, thereby incurring expense, losing time from his practice, and facing impairment of his professional reputation.

## DISCUSSION

### I. FRAUD AND DECEIT

Cicone contends on appeal the lower court abused its discretion in sustaining the demurrer to the original cross-complaint without leave to amend.

Preliminarily, the general principles governing demurrers should be noted: The party against whom a complaint or cross-complaint has been filed may object by demurrer to the pleading where it does not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) ■ Sustaining a general demurrer without leave to amend is not an abuse of discretion if it appears from the pleading there is no reasonable probability the defect can be cured by amendment under applicable substantive law. (*Vater* v. *County of Glenn* (1958) 49 Cal.2d 815, 821 [323 P.2d 85]; *Sackett* v. *Wyatt* (1973) 32 Cal.App.3d 592, 603 [108 Cal.Rptr. 219].) The burden is on the cross-complainant to demonstrate the lower court abused its discretion. The cross-complainant must show in what manner he can amend his cross-complaint and how that amendment will change the legal effect of his pleading. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].) If the demurrer was properly sustained on any ground, then the lower court will be affirmed. (*Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 422 [190 Cal.Rptr. 400].)

In the third, fourth, fifth and sixth causes of action of the cross-complaint, Cicone attempts to allege causes of action for fraud and deceit.

*Fraud*

■ Fraud is an intentional tort, the elements of which are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 635 [178 Cal.Rptr. 167].)[1]

Every element of the cause of action for fraud must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made. (*Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 109 [128 Cal.Rptr. 901].)

[1]Section 1709 of the Civil Code provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

Section 1710 of the Civil Code provides: "A deceit, within the meaning of the last section, is either:

"1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

"2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

"3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

"4. A promise, made without any intention of performing it."

The lower court determined, inter alia, cross-defendants owed no duty to Cicone and therefore Cicone failed to state a cause of action, citing for this proposition, among others, *Groswird* v. *Hayne Investments, Inc.* (Cal.App.) However, a rehearing was granted in *Groswird* and the subsequent opinion was not certified for publication.

### Duty

Cross-defendants argue a lack of duty owed to Cicone. However, this argument appears in relation to the causes of action for negligence and indemnity. ■ More properly it could be stated, inferentially everyone has a duty to refrain from committing intentionally tortious conduct against another. ■ Thus, a promise material to the contract which is made without any intention of performing it is deemed a misrepresentation of fact. (Civ. Code, §§ 1572, subd. 4, 1710, subd. 4; *Jacobs* v. *Freeman* (1980) 104 Cal.App.3d 177, 192 [163 Cal.Rptr. 680].)

Cicone alleges cross-defendants made a promise without disclosing they entertained no intention to perform said promise to deem the warranty of the financial statement as only to sellers' best knowledge and belief.

■ Although a duty to disclose a material fact normally arises only where there exists a confidential relation between the parties or other special circumstances require disclosure, where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. (*Ibid.*) One who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud. (*Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 346-347; *Rogers* v. *Warden* (1942) 20 Cal.2d 286, 289 [125 P.2d 7].)

"The extent of liability an attorney may incur toward third persons, while the attorney is acting on behalf of a client, has been the subject of divergent opinion in various American jurisdictions, the traditional view being that an attorney may not generally be held liable to third persons because he is not in privity with them, and owes them no duty to act with care. (See Attorneys—Liability to Third Parties, 45 A.L.R.3d 1177, 1181.) A typical statement of this approach is that 'an attorney is not liable to third persons for acts committed in good faith in performance of professional activities as an attorney for his client. If, however, an attorney is actuated by malicious motives, or shares the illegal motives of his client, he may be personally liable with the client for damage suffered by a third person as the result of the attorney's actions.' (Fns. omitted.) (7 Am.Jur.2d, Attorneys, § 196, p. 161 (1963).)" (*Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d 104, 109.)

■ In California it is well established that an attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person. (*Ibid.*)

Thus, the case law is clear that a duty is owed by an attorney not to defraud another, even if that other is an attorney negotiating at arm's length.

Thus, while duty is not an element of fraud in the traditional sense, a duty is owed to others to refrain from intentionally tortious conduct. Therefore, any inference arising from the lower court's decision that the element of duty bars Cicone's causes of action for fraud and deceit is not supported by law.

### Misrepresentation

■ Cross-defendants assert the alleged misrepresentation is one of law and therefore not actionable. According to this theory, the allegations that Canady made "certain assurances and promises that the correct interpretation of the guarantee clause (or clauses) in [the] agreement was that it would be based upon sellers' best information and belief," amounts to nothing more than an allegation that Canady stated a legal opinion of how the terms of the contract would be interpreted in the future.

Cicone offers a proposed amendment to the pleading to the effect that Canady, with Stromberg's tacit approval, stated URS would deem the sellers to be guaranteeing the information in the balance sheet only to the sellers' best knowledge.

It is true the representation must ordinarily be an affirmation of fact. (Civ. Code, § 1710, subd. 1.) A misrepresentation of law is ordinarily not actionable in the absence of a confidential relationship or other special circumstance. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 447, 451, pp. 2712, 2715.) The theory is either that everyone is bound to know the law, or that a statement regarding the law is a mere opinion on which one may not rely. (*Ibid.*) "'Wherever a party states a matter which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation.' (2 Pomeroy's Equity Jurisprudence, sec. 878.)" (*Crandall v. Parks* (1908) 152 Cal. 772, 776 [93 P. 1018].) Predictions or representations as to what will happen in the future are normally treated as opinion; but often they may be interpreted as implying knowledge of facts which

makes the predictions probable. If the defendant does not know of such facts, the statement is an actionable misrepresentation. (See Rest.2d, Torts, § 539.) Thus, a statement by an architect that a building will not cost more than a certain amount may be regarded as an affirmation of fact. (*Barron Estate Co.* v. *Woodruff Co.* (1912) 163 Cal. 561, 574 [126 P. 351].) The same is true where an agent states his principal will advance money to harvest a crop, or where a corporation agent represents the corporation will lease certain property or locate a plant in a certain city. (*California C. & C. Corp.* v. *Carpenter* (1926) 77 Cal.App. 18, 27 [246 P. 126]; see also *Eade* v. *Reich* (1932) 120 Cal.App. 32, 35 [7 P.2d 1043].)

A statement of what the defendant or some third person intends to do relates to an existing state of mind, and is a representation of fact. (4 Witkin, Summary of Cal. Law, *op. cit. supra,* § 453, p. 2717.) Thus, a promise made without any intention to perform it may constitute fraud. In other words, a promise to do something necessarily implies the intention to perform, and where such intention is absent, there is a misrepresentation of fact, which is actionable fraud. (Civ. Code, § 1710, subd. 4.) A trier of fact may be justified in inferring from the circumstances surrounding the subsequent repudiation that defendant never intended to carry out the agreement when it was made. The subsequent repudiation relates back to the original promise. (*Tenzer* v. *Superscope, Inc.* (1985) 39 Cal.3d 18, 30 [216 Cal.Rptr. 130, 702 P.2d 212].)

The proposed allegations of Cicone allege a promise without any intention to perform: "Canady's statement, made on behalf of Stromberg and URS, constituted a promise that URS would accept the balance sheet as correct only to the best of the sellers' knowledge. As Canady knew, that promise was false and was made without any intention of performing it, for cross-defendants intended to rely on the strict warranty contained in the written agreement. The promise was made for the purpose of inducing Cicone to rely on it and thereby to advise the sellers to follow through with the sale and to sign the final agreement."

Cross-defendants further contend Cicone's proposed amendments to the cross-complaint are barred by his sworn interrogatory answers directly contradicting the proposed allegations. According to cross-defendants, if Cicone's proposed amended pleadings allege "a promise made without the intention to perform it," that allegation is inconsistent with Cicone's answers to interrogatories and is, therefore, impermissible.[2]

[2]Cross-defendants' motion to augment the record filed on April 22, 1985, to include interrogatories propounded by cross-defendants to Cicone and Cicone's responses to said interrogatories was granted on July 2, 1985.

Interrogatory No. 12 propounded to Cicone states: "If you contend that Richard W. Canady stated that any unaudited accounting in the sales agreement would be based on the seller's best information and belief, please describe the exact statements of Mr. Canady, the date or dates, times, and circumstances under which they were uttered, and your replies to such statements (to the best of your knowledge)."

Cicone's full response to the interrogatory was as follows: "Please see response to Interrogatory No. 9. Further, the specific topic of the unaudited accounting was brought to the attention of Mr. Canady during a meeting on October 13, 1981. Plaintiffs and cross-complainant herein indicated that *the unaudited accounting could not be guaranteed, in response to which Mr. Canady represented that this was the exact meaning of the paragraph guaranteeing the accounting,* in that *any representations as to financial matters would be on the best knowledge of Lucas and that as such, Lucas did not guarantee any such financial information.* This response is to the best recollection of cross-complainant herein, particularly in light of the passage of time since said meeting." (Italics added.)

Cross-defendants contend the foregoing answer limits the scope of Cicone's allegations to categorizing Canady's statement as an interpretation of the sales agreement, i.e., an unactionable opinion of law.

"As a general rule in testing a pleading against a demurrer the facts alleged in the pleading are deemed to be true, however improbable they may be. [Citation.] The courts, however, will not close their eyes to situations where a complaint contains allegations of fact inconsistent with attached documents, or allegations contrary to facts which are judicially noticed. [Citations.] Thus, a pleading valid on its face may nevertheless be subject to demurrer when matters judicially noticed by the court render the complaint meritless. In this regard the court passing upon the question of the demurrer may look to affidavits filed on behalf of plaintiff, and the plaintiff's answers to interrogatories [citation], as well as to the plaintiff's response to request for admissions. [Citations.]" (*Del E. Webb Corp.* v. *Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604 [176 Cal.Rptr. 824].)

Cross-defendants rely primarily on *Dwan* v. *Dixon* (1963) 216 Cal.App.2d 260 [30 Cal.Rptr. 749] in which plaintiffs alleged in their original complaint that two of the defendants therein served intoxicating beverages to one Froberg, a third defendant, and then permitted him to drive, knowing he was intoxicated. Because California law at that time did not provide a cause of action based on facts such as those alleged above (*id.,* at p. 264), plaintiffs attempted to amend their complaint by alleging a more active course of

conduct by defendants, alleging defendants took an active part in "putting" Froberg in his car, "heading him for the highway," and "aiding" and "assisting" him in driving. (*Ibid.*) Defendants demurred, contending the amendment was improper since it was inconsistent with statements in the sworn affidavit of plaintiffs' attorney and with plaintiffs' interrogatory answers. They argued that "to permit appellants to make allegations which are directly contradictory to the facts within their own knowledge is to defeat the rule of truthful pleading." (*Ibid.*) The Court of Appeal agreed, affirming the lower court's sustaining of defendants' demurrer without leave to amend.

However, in *Dwan* v. *Dixon,* the written interrogatories requested plaintiffs divulge "each and every fact upon which the allegations" of the complaint were based. The facts provided by plaintiffs failed to support the allegations of the amended pleading. (*Id.,* at p. 262.)

In the instant case, the interrogatory in question fails to make such a comprehensive request. Furthermore, Cicone's response is made based upon his "best recollection." Finally, in our view, Cicone's answer to the interrogatory is not so inconsistent with the facts appearing in Cicone's proposed allegations as to render the cross-complaint demurrable. (See *Del E. Webb. Corp.* v. *Structural Materials Co., supra,* 123 Cal.App.3d 593, 605-606.)

### *Justifiable Reliance*

Cross-defendants contend the allegation of the word "reasonable" is insufficient to allege justifiable reliance in this case. Cross-defendants declare: "[A]n attorney is not justified in relying on statements of law made by an adverse party or attorney in the course of arm's length negotiations." Cross-defendants urge us to hold any reliance by Cicone on the alleged misrepresentation was unjustifiable as a matter of law.

Whether reliance is justified is a question of fact for the determination of the trier of fact. The issue is whether the person who claims reliance was justified in relying on the representation in light of his own knowledge and experience. (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253].) As Cicone points out: "Negligence in reliance upon a misrepresentation is not a defense where the misrepresentation was *intentionally* made to induce reliance upon it. (*Hefferan* v. *Freebairn* (1950) 34 Cal.2d 715, 719 . . .; *Smith* v. *Williams* (1961) 55 Cal.2d 617, 620 . . . .) Only '[i]f the conduct of the plaintiff [in relying upon a misrepresentation] in the light of his own intelligence and information was manifestly unreasonable' will he be denied recovery. (*Hefferan* v. *Free-*

*bairn, supra,* 34 Cal.2d at p. 719.)" (*Winn* v. *McCulloch Corp.* (1976) 60 Cal.App.3d 663, 671 [131 Cal.Rptr. 597], italics added.)

While the complaint has not been carefully drawn in this regard, it appears there is a reasonable possibility the paucity of facts regarding a justifiable reliance can be cured by amendment and the demurrer should not be sustained without leave to amend on this ground. (*Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 739-740 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].)[3]

*Proximate Causation*

The lower court determined "Defendant's statements are not a proximate cause of harm to cross-complainant (assuming damage) as a matter of law. (See *Groswird* v. *Hayne Investments* 133 CA3d. 624) . . ."[4] Cross-defendants assert the settlement of the controversy between Advanced and URS was an intervening cause which removed the possibility of a meritorious defense. Accordingly, cross-defendants argue the alleged damage was not caused by the alleged misrepresentation but by an independent intervening force and claims the fraud causes of action must be dismissed.

Ordinarily, foreseeability is a question of fact for the jury. "It may be decided as a question of law only if, 'under the undisputed facts there is no room for a reasonable difference of opinion.'" (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947], quoting from *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660, 664 [130 Cal.Rptr. 125].) "'[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it

---

[3]Cross-defendants strongly assert that even taking Cicone's allegation of a "promise to perform" as true, any reliance by Cicone was unreasonable as a matter of law. To support this argument, cross-defendants rely on their assertion that the "terms of the sales agreement were directly at variance with Canady's alleged representation *and* the fact that it contained an integration clause expressly providing that the written document 'supersedes all prior and contemporaneous agreements. . . .'" However, the sales agreement was not attached and incorporated into the complaint or the cross-complaint by reference. Cross-defendants attempt to make it a part of the record as an exhibit to cross-defendants' demurrer.

"It is an elementary rule that the sole function of a demurrer is to test the sufficiency of the challenged pleading. It cannot, properly, be addressed to or based upon evidence or other extrinsic matters." (*Cravens* v. *Coghlan* (1957) 154 Cal.App.2d 215, 217 [315 P.2d 910].) Although the court may take judicial notice of judicial records and decisions in the same case, this does not mean it may take judicial notice of the truth of factual matters asserted therein. (*Garcia* v. *Sterling* (1985) 176 Cal.App.3d 17, 22 [221 Cal.Rptr. 349].) The document attached to the demurrer was not properly before the lower court, nor is it properly before this court. We and the trial court are not permitted to consider it for any purpose in ruling upon the demurrer.

[4]As stated previously, a rehearing was granted in *Groswird.*

in guiding practical conduct.' (2 Harper & James, Law of Torts [1956] § 18.2, at p. 1020.)" (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 57.) An actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 163 [95 Cal.Rptr. 623, 486 P.2d 151].) If the act of the third party is not reasonably foreseeable, not a normal consequence in the situation, it is a superseding cause. (*Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934, 944 [155 Cal.Rptr. 393].)

Accepting the proposed amended allegations as true, a trier of fact could conclude it is reasonably foreseeable that Advanced, faced with a large monetary demand and a prospect of an expensive defense, would settle the case rather than litigate the issues. If so found, this would be a forseeable intervening cause, not a superseding cause, and would not relieve cross-defendants of potential liability.

### *Damages*

■ Cicone challenges the lower court's finding Cicone "has suffered no damage . . . ."

The case of *Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931 [175 Cal.Rptr. 81] recognizes detriment to a claimant is inferable from exposure to legal malpractice liability. In that case, the plaintiff was obliged to defend a malpractice action whereby he would incur expenses, lose time from his practice, suffer inconvenience, face professional embarrassment and the impairment of his professional reputation. (*Id.,* at p. 944.) Reaching a similar conclusion upon different facts, the court held in *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d 104, 111-112: "Such legal expense is neither remote nor speculative, but must of necessity be incurred by plaintiff to make him whole." (*Id.,* at p. 112.)

We conclude the lower court abused its discretion in sustaining the demurrer without leave to amend as to the causes of action for fraud and deceit.

## II. NEGLIGENT MISREPRESENTATION

The seventh, eighth and ninth causes of action of the cross-complaint, incorporating various other allegations of the cross-complaint, are based on negligence. Cicone asserts those causes of action state, or can be amended to state, a cause of action for negligent misrepresentation. He relies on the proposed factual allegations as set forth in the summary of facts with respect

to the fraud and deceit causes of action modified to allege a negligent representation by Canady rather than an intentional misrepresentation.

 "Where a defendant makes false statements, honestly believing them to be true, but without reasonable grounds for such belief, he may be held liable for negligent misrepresentation, a form of deceit." (*Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d 104, 111; *Muraoka* v. *Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 119 [206 Cal.Rptr. 476].)

However, we must reexamine the question of duty owed by cross-defendants to Cicone as it relates to a cause of action for negligent misrepresentation. Cicone concedes, in his negligence argument, an attorney *advising his own client* has no duty of care to third persons in the absence of an allegation that his advice was foreseeably transmitted to or relied upon by third persons or that he made some affirmative misrepresentation to the third person's attorney. (*Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 343-345.)

Cicone contends, however, *Goodman* recognizes that where, as in *Roberts, supra,* 57 Cal.App.3d 104, the attorney intends his statement to be relied upon by third persons dealing with his client, the attorney owes the third person a duty of care, and argues "certainly, where an affirmative negligent misrepresentation is made directly to the third persons and their attorney, there is no sound reason to shield the attorney, or his equally negligent client, from liability for their conduct."

A "deceit" is defined in California law as "[t]he assertion, as a fact, of that which is not true, *by one who has no reasonable ground for believing it to be true; . . .*" (Civ. Code, § 1710, subd. 2, italics added.) Thus, where a defendant makes false statements honestly believing them to be true, but without reasonable grounds for such belief, he may be held liable for negligent misrepresentation, a form of deceit. (*Muraoka* v. *Budget Rent-A-Car, Inc., supra,* 160 Cal.App.3d 107, 119, citing *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d at p. 111.)

Here, Cicone alleges cross-defendant Canady, an attorney, in his client's presence (the buyer) and in the presence of cross-complainant Cicone, an attorney, and his client (the seller) represented to Cicone and his client that the buyer would deem the seller to be guaranteeing the information in the unaudited balance sheet only to the seller's best knowledge and belief. This representation was made to induce Cicone to advise his client to close the sales transaction immediately, which was done. In an amended cross-complaint, Cicone would further allege that this representation was not true, that Canady had no reasonable basis for believing it to be true, that Cicone

and his client were intended to and did, in fact, rely upon Canady's negligent representation with resulting damages.

In *Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, plaintiffs, nonlawyers, sought damages from defendant, an attorney, for losses they incurred on stock purchased from defendant's clients. Plaintiffs alleged defendant negligently advised his clients the stock could be sold by them to third persons without jeopardizing the exempt status of the stock under the Securities Act of 1933. The alleged result of the purchase was an order by the Securities Exchange Commission suspending exemption of the stock with consequent loss in the stock's value, to plaintiffs' damage. The trial court sustained a general demurrer to plaintiffs' complaint without leave to amend and entered judgment of dismissal. The Supreme Court affirmed, holding defendant's duty of care in giving legal advice to his client did not extend to plaintiffs with whom defendant's clients, in acting upon the advice, dealt at arm's length, in the absence of any showing that the legal advice was foreseeably transmitted to or relied on by plaintiffs, or that plaintiffs were intended beneficiaries of a transaction to which the advice pertained. The court stated: "The present defendant had no relationship to plaintiffs that would give rise to his owing plaintiffs any duty of care in advising his clients that they could sell the stock without adverse consequences. There is no allegation that the advice was ever communicated to plaintiffs and hence no basis for any claim that they relied upon it in purchasing or retaining the stock. Nor was the advice given for the purpose of enabling defendant's clients to discharge any obligation to plaintiffs. Thus, there is no allegation that plaintiffs had any relationship to defendant's clients or to the corporation as stockholders or otherwise when the advice was given." (*Id.,* at pp. 343-344, fn. omitted.) Thus, *Goodman* is clearly distinguishable on its facts from the instant case. However, the Supreme Court in *Goodman* explicitly recognizes that where an attorney *intends* his advice or statement to his client to be relied upon by third persons dealing with his client, the attorney owes the third person a duty of care. As stated in *Goodman*: "We are therefore not concerned with such cases as *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 110-111, . . . in which an attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the client. *In that situation the attorney owes the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it is 'the end and aim of the transaction,'* (*Glanzer* v. *Shepard* (1922) 233 N.Y. 236, 238-239 [135 N.E. 275, 23 ALR 1425])" (18 Cal.3d at p. 343, fn. 4). In the present case, Cicone's reliance on Canady's alleged misrepresentation was the very purpose of the representation. Canady expected Cicone to advise his client to close the transaction; Cicone did so and the transaction was closed.

A duty of care under these facts logically follows from the holding in *Roberts*. In that case, plaintiff alleged he was the prospective lender of substantial moneys to BBC, a partnership; that defendant attorneys gave a member of the partnership a letter stating that in their professional opinion BBC was a general partnership of 14 general partners; that they knew this letter was to be used to induce plaintiff to make loans to BBC; that they failed to disclose the belief on the part of many of the partners that BBC was a limited partnership and that the limited partners had no personal liability for its obligations; and that, in reliance on the letter, plaintiff made loans and thereafter incurred litigation costs in a still pending attempt to estabish liability of the partners as general partners. The Court of Appeal held that a cause of action for negligent misrepresentation was stated under the principles laid down in *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]; *Donald* v. *Garry* (1971) 19 Cal.App.3d 769 [97 Cal.Rptr. 191, 45 A.L.R.3d 1177] and Restatement Second of Torts section 324A. "The defendants' [attorneys'] opinion concerning the status of the partners was rendered for the purpose of influencing plaintiff's conduct, and harm to him was clearly foreseeable. We have no difficulty, therefore, in determining that the issuance of a legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care, or the attorneys who do not act carefully will have breached a duty *owed to those they attempted or expected to influence on behalf of their clients.*" (57 Cal.App.3d at p. 111, italics added.)

If the issuance of a legal opinion intended to secure a benefit for a client must be issued with due care towards third persons whom the attorneys attempt or expect to influence on behalf of their clients, then a fortiori why should such a duty of care not exist toward the third party's attorney where an affirmative misrepresentation of fact is made directly to the attorney for the purpose of influencing his client?

Public policy does not foreclose the imposition of a duty of care by Canady to Cicone under these facts. To the contrary, a majority of the policy factors considered by the courts in determining the question of a duty of care support such a duty. "'The determination whether in a specific case the defendant will be held liable to a third person not in privity . . . involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff [clearly present], the foreseeability of harm to him [clearly present in the instant case], the degree of certainty that the plaintiff suffered injury [clearly present], the closeness of the connection between the defendant's conduct and the injury suffered [clearly present], the moral blame attached to the defendant's conduct [arguable in view of the fact defendant's client was also present], and the policy of preventing future harm [clearly present].'" (*Goodman* v. *Kennedy,*

*supra,* 18 Cal.3d at pp. 342-343, quoting from *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; see also Note, *Attorneys' Liability to Third Parties for Professional Negligence* (1978) 66 Cal.L.Rev. 393.) Finally, persons such as Canady have, or can readily obtain, insurance for these risks.

Nor do we visualize any legitimate threat to the professional relationship between Canady and his client, the buyer, by imposing on Canady a duty of care toward Cicone under our facts. An attorney must take pains to avoid negligent misrepresentation of material facts in negotiating business transactions with third parties and their attorneys. All that is required to avoid negligent misrepresentation is that the attorney have some reasonable basis for believing the truthfulness of his or her representations. Imposing possible liability where such a basis is lacking will not prevent an attorney from devoting his entire energies to his client's interest. Neither will it require the attorney to assist opposing counsel in the performance of the latter's duties to his client.

Finally, it takes more than a negligent misrepresentation to impose liability. The misrepresentation must be of a material fact, it must be made with the intent to induce reliance by the opposing party, it must actually be relied upon reasonably by the opposing party and proof must be made of damages proximately caused by the misrepresentation. All of these elements are present under the allegations here reviewed. We therefore conclude the trial court abused its discretion in sustaining cross-defendants' demurrer to the seventh, eighth and ninth causes of action without leave to amend.

### III. FULL EQUITABLE INDEMNITY

The trial court additionally sustained cross-defendants' demurrer to cross-complainant's first cause of action seeking full equitable indemnity without leave to amend. Cicone contends this was error as the "cross-complaint states or can be amended to state a cause of action for full equitable indemnity" as an alternative to the direct cause of action for fraud and deceit. In sum, Cicone contends the concept of full equitable indemnity survived *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], citing *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 375-376 [187 Cal.Rptr. 879]. In *American Motorcycle,* our Supreme Court held that a concurrent tortfeasor may obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis.

In *E. L. White, Inc.* v. *City of Huntington Beach, supra,* the Fourth District Court of Appeal found substantial evidence had been presented to

support the trial court's decision to require Huntington Beach to fully indemnify E. L. White, Inc., and its insurer, Royal Globe, in light of evidence presented which established E. L. White, Inc., was liable only vicariously and Huntington Beach was actually negligent for a wrongful death and personal injury which arose from the same accident at a construction site. The Court of Appeal concluded a vicariously liable tortfeasor may still obtain full indemnity even though *American Motorcycle* now allows partial indemnity to be obtained on a comparative fault basis in appropriate cases. "To conclude otherwise would counter basic 'principles of common-law indemnification between vicariously liable tortfeasors and tortfeasors guilty of the acts and omissions causing the harm. In short, the apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable . . . .' [Citation.]" (*Id.*, at p. 376, fn. omitted.)

Restatement Second of Torts section 886B entitled "Indemnity Between Tortfeasors" provides in pertinent part: "(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

"(2) Instances in which indemnity is granted under this principle include the following:

"· · · · · · · · · · · · · · · · · · · · · · · · · · ·

"(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied; . . ."

The concept of joint tortfeasors for the purpose of indemnity is explained in the restatement as ". . . two or more persons who are liable to the same person for the same harm. *It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants.* The rule stated applies to all torts, including not only negligence but also misrepresentation, defamation, injurious falsehood, nuisance or any other basis of tort liability." (Rest.2d Torts, § 886A, com. b, italics added.)

Although there can be no indemnity without joint and several liability by the prospective indemnitor and indemnitee (*Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 425 [190 Cal.Rptr. 400]), indemnity does not require a "special" relationship between the cotortfeasors. (*People* ex. rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 757, fn. 4 [163 Cal.Rptr. 585, 608 P.2d 673]. It only requires a significant difference in the kind or quality of the conduct of each tortfeasor. (*American Motorcycle*

*Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 594-595, fn. 4.) Here, Cicone is alleged only to have been negligent while the cross-defendants Canady and his client are alleged to have intentionally deceived Cicone and his client. Should this be proved at trial, then the entire liability may be shifted to Canady and his client. On the other hand, if cross-defendants are only found to have been negligent in their representations to cross-complainant, then partial (comparative) indemnity under the *American Motorcycle* principles will come into play.

Thus, we conclude the trial court abused its discretion in sustaining cross-defendants' demurrer to cross-complainant's first cause of action without leave to amend.

## IV.

Cicone also contends the trial court erred in sustaining cross-defendants' demurrer to cross-complainant's second cause of action for partial equitable indemnity without leave to amend. In light of our previous discussion in parts II and III of this opinion, no further analysis need be made as the same rationale would apply to a cause of action for partial equitable indemnity. If Cicone may properly allege a cause of action for negligent misrepresentation, he may also allege a cause of action for partial equitable indemnity. The trial court abused its discretion in sustaining cross-defendants' demurrer to this cause of action without leave to amend.

The judgment of dismissal is reversed as to all causes of action alleged in Cicone's cross-complaint and the matter is remanded to the trial court for further proceedings in accordance with the views expressed herein.

Cross-complainant, Cicone, to recover his costs on appeal.

Franson, Acting P. J., and Hoover, J.,* concurred.

A petition for a rehearing was denied August 8, 1986, and the opinion was modified to read as printed above.

*Assigned by the Chairperson of the Judicial Council.