Willis M. HANSEN, Dennis B. Hansen, State Bank of Lawler, and Precision of New Hampton, Inc., Plaintiffs,

v.

ANDERSON, WILMARTH & VAN DER MAATEN, a Partnership, Calvin R. Anderson, Lee E. Wilmarth and Andrew F. Van Der Maaten, Appellants,

v.

Michael Kennedy, Appellee.

No. 99–1229.

Supreme Court of Iowa.

July 5, 2001.

Patrick M. Roby and Christopher L. Bruns of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellant.

Gregory M. Lederer of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellee.

LAVORATO, Chief Justice.

In this legal malpractice action, clients sued their lawyers for malpractice stemming from the lawyers' handling of a commercial transaction for the clients. The lawyers in turn sought indemnity from the lawyer representing the opposing party in the transaction for fraudulent misrepresentation in connection with that transaction. The district court concluded there was no duty supporting an indemnity claim and, on this basis, sustained a motion for summary judgment dismissing the claim. We conclude there was such a duty and therefore reverse and remand.

## I. Background Facts and Proceedings.

We previously discussed the details of events leading up to this case in *Ezzone v.*

*Riccardi,* 525 N.W.2d 388 (Iowa 1994). Willis and Dennis Hansen, represented by the Iowa law firm of Anderson, Wilmarth & Van der Maaten, purchased the assets of Precision Torque Converters of Iowa, Inc. (PTCI) in April 1987. The company was reincorporated as Precision of New Hampton, Inc. (PNH). The sales agreement listed PTCI and Ronald "Rick" Riccardi as the parties selling the assets of PTCI. Attorney Michael Kennedy represented PTCI and Riccardi in the transaction.

Later, Harold Ezzone and Patricia LaRosa sued Riccardi, the Hansens, PNH, and State Bank of Lawler, alleging that they—Ezzone and LaRosa—were the actual owners of PTCI and seeking a variety of damages. Anderson, Wilmarth & Van der Maaten represented these defendants.

The jury found that Ezzone and LaRosa each owned fifty percent of PTCI. The jury awarded damages to Ezzone and LaRosa for interference with contract claims, conversion of ownership, and breach of confidential relationship. However, to avoid duplicative damages, judgment was only entered on the jury's award for breach of confidential relationship. The jury also awarded Ezzone and LaRosa punitive damages against the Hansens and State Bank of Lawler.

Ezzone and LaRosa appealed and the Hansens, PNH, and State Bank of Lawler cross-appealed. Among other things, we affirmed the judgment for compensatory damages but reversed and remanded on the issue of punitive damages. Ezzone and LaRosa had also named Kennedy as a defendant; however, Kennedy settled with them before trial.

On November 13, 1996, the Hansens, State Bank of Lawler, and PNH (collectively Hansen plaintiffs) filed suit against Anderson, Wilmarth & Van der Maaten, as well as against Calvin R. Anderson, Lee E. Wilmarth, and Andrew F. Van der Maaten in their individual capacities (collectively Anderson defendants). The Hansen plaintiffs alleged thirteen instances of negligence on the part of the Anderson defendants pertaining to the sale of PTCI and their handling of the subsequent lawsuit brought by Ezzone and LaRosa. They further alleged theories of breach of contract and breach of implied warranty premised on the same events asserted in the negligence claim. District judge Douglas S. Russell heard the case in a bench trial but has not yet ruled.

Meanwhile, the Anderson defendants filed a cross-petition against Kennedy for indemnity. The Anderson defendants alleged the following facts, all of which are supported by the record. Kennedy was the attorney for PTCI and represented the company and Riccardi in connection with the sale of PTCI assets to Willis and Dennis Hansen. The purchase agreement required Riccardi to provide proper evidence that he had appropriate corporate authority to execute the sales documents, including corporate minutes, a certificate of good standing of corporate authority, and evidence of authorization to do business in Iowa.

At Riccardi's request and shortly before the April 1987 closing, Kennedy prepared two documents entitled "Organizational Meeting of Precision Torque Converters of Iowa, Inc." and "Board Meeting of Precision Torque Converters of Iowa, Inc." Kennedy prepared the documents for the purpose of complying with the purchase agreement, and these documents were purportedly dated November 30, 1986.

The first document stated that 200,000 shares of stock "shall be issued" in Riccardi's name and that Riccardi was elected the sole member of the board of directors. The second document stated Riccardi was

elected president and secretary-treasurer of PTCI and that Riccardi would be the official of the corporation with the power to issue deeds and bills of sale on equipment.

These documents were false because (1) there had never been an organizational meeting on November 30, 1986, (2) there was no corporate authority for stock to be issued to Riccardi, (3) no stock was issued to Riccardi, and (4) Riccardi was never elected to the board of directors. Riccardi therefore had no authority to elect himself president and secretary-treasurer, or to be the person with the power to issue deeds and bills of sale on equipment.

Calvin Anderson, one of the Anderson defendants, attended the closing for the buyers. Kennedy provided to Calvin Anderson the two documents required by the agreement as evidence that Riccardi had authorization to enter into the agreement on behalf of PTCI. When he presented those documents to Anderson, Kennedy knew the documents were false, expected Anderson to rely on them, and knew that Anderson would not question the integrity of a fellow member of the bar. Anderson relied on those documents in allowing the sale to be consummated.

Kennedy filed an answer to the cross-petition. He admitted preparing and providing the two documents but denied for lack of information the allegation that the contents of the documents were not true.

Later, Kennedy moved for summary judgment, contending that the Anderson defendants had no basis upon which to premise a claim for indemnity.

The Anderson defendants resisted the motion, contending that Kennedy owed them a special duty by virtue of their relationship and by virtue of various provisions of the Iowa Code of Professional Responsibility.

District judge James C. Bauch granted Kennedy's motion for summary judgment and dismissed the indemnity claim. The court concluded that "Kennedy represented his clients in an arms-length commercial transaction, and [the] Anderson defendants represented the Hansens," and that there was no special relationship which could give rise to something more than a "general duty that every member of society owes to every other member—the duty not to harm him through tortious acts." The court also rejected the argument that the Code of Professional Conduct gives rise to an "independent duty" supporting a claim of indemnity on the basis that this court "has held that an ethics violation does not create an independent, private cause of action."

The Anderson defendants appeal from this ruling.

## II. Scope of Review.

■ We review a ruling granting a summary judgment motion for correction of errors at law. *Knudson v. City of Decorah,* 622 N.W.2d 42, 48 (Iowa 2000). Summary judgment is appropriate when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 237(c).

■ When reviewing a summary judgment ruling, "we examine the record before the district court to decide whether any material fact is in dispute and whether the district court correctly applied the law." *Knudson,* 622 N.W.2d at 48. We view the evidence in the light most favorable to the nonmoving party—in this case, the Anderson defendants—and they are

"entitled to every legitimate inference that can be reasonably deduced from the evidence." *Id.*

 Additionally, because the existence of a duty is a question of law, the court may appropriately adjudicate that question on a motion for summary judgment. *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 718 (Iowa 1999).

### III. Indemnity—the Law Generally.

 Generally speaking, "[i]ndemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other." 41 Am. Jur.2d *Indemnity* § 1, at 347 (1995). "It is a device by which a tort-feasor 'passes through' his entire liability to a third party whom the tort-feasor alleges is the real party responsible for injury." 42 C.J.S. *Indemnity* § 2, at 73 (1991).

Iowa recognizes both statutory and common-law indemnity rights. Statutory indemnification is that which is permitted under the Iowa Code. For example, under Iowa Code section 85.22(1), "an employer or employer's insurer has a statutory right to be indemnified and to have a lien on any recovery or judgment entered in an action against a third-party tortfeasor." *Daniels v. Hi–Way Truck Equip., Inc.*, 505 N.W.2d 485, 487 (Iowa 1993).

 Common-law indemnity can arise either by contract or, as in case of a tort, by law. *See Farmers Coop. Co. v. Stockdales' Corp.*, 366 N.W.2d 184, 186 (Iowa 1985). This court has recognized several grounds of common-law indemnity: (1) express contract; (2) vicarious liability; (3) breach of an independent duty between the indemnitor and indemnitee; and (4) the primary or active tortious conduct of the indemnitor as compared to the second-

ary or passive tortious conduct of the indemnitee. *Id.*

The first three grounds are based upon a relationship existing between the indemnitor and the indemnitee. *Id.* The fourth ground is based solely upon a common liability arising from the concurrent negligence of the parties. *Id.* Since *Farmers,* we have abandoned the primary/active versus secondary/passive liability because it is incompatible with "our statutory network of comparative fault." *Am. Trust & Sav. Bank v. United States Fid. & Guar. Co.*, 439 N.W.2d 188, 190 (Iowa 1989).

This court has recognized the common-law doctrine of indemnity, absent a contract, in four situations:

"(1) Where the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged.

(2) Where the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged. Restatement Restitution, Sec. 90.

(3) Where the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged.

(4) Where the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of the one sought to be charged."

*C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 553–54 (Iowa 1983) (quoting *Peters v. Lyons*, 168 N.W.2d 759, 767 (Iowa 1969)).

### IV. The Parties' Contentions.

The Anderson defendants contend the district court erred in sustaining Kennedy's motion for summary judgment on their breach-of-independent-duty theory. Kennedy contends that as a matter of law

he owed them no duty. Kennedy also contends that the Anderson defendants' theory of indemnity is really one of active-passive liability and is therefore barred.

## V. Analysis.

 **A. Duty.** The theory of indemnity based on liability stemming from breach of independent duty falls within the concept of equitable indemnity. *See* 42 C.J.S. *Indemnity* § 29, at 118. Equitable indemnity is a form of restitution and, as its name suggests, is founded on equitable principles. *See Henning v. Sec. Bank,* 564 N.W.2d 398, 401 (Iowa 1997); *Hunt v. Ernzen,* 252 N.W.2d 445, 447 (Iowa 1977). Equitable indemnity "is allowed where one person has discharged an obligation that another person should bear; it places the final responsibility where equity would lay the ultimate burden." *Hunt,* at 447–48; *accord State ex rel. Miller v. Philip Morris Inc.,* 577 N.W.2d 401, 406 (Iowa 1998).

 To prove a claim for indemnity based on a breach of an independent duty, the party seeking indemnity must establish that the indemnitor owed a duty to the indemnitee. *See Daniels,* 505 N.W.2d at 490. The issue here is whether attorneys representing persons on opposite sides of a transaction owe each other, as opposed to the clients those attorneys represent, a duty to refrain from intentional misrepresentation throughout the course of the transaction.

To establish that duty, the Anderson defendants rely heavily on Restatement (Third) of the Law Governing Lawyers, section 98, which provides in part that "[a] lawyer communicating on behalf of a client with a nonclient may not ... [k]nowingly make a false statement of material fact or law to the nonclient...." Restatement (Third) of the Law Governing Lawyers § 98 (1998).

Comment a to section 98 provides:

This Section considers misrepresentations by a lawyer in the course of representing a client. Its rules may apply in representing a client in litigation, such as when negotiating a settlement, *as well as in nonlitigation situations.*

Restatement (Third) of the Law Governing Lawyers § 98 cmt. a (emphasis added).

In explaining the rationale for the rule, comment b to section 98 states:

A lawyer communicating with a nonclient on behalf of a client is not privileged to make a material misrepresentation of fact or law to the nonclient. The law governing misrepresentation by a lawyer includes the criminal law (theft by deception), *the law of misrepresentation in tort law* and of mistake and fraud in contract law, and procedural law governing statements by an advocate.... *Compliance with those obligations meets social expectations of honesty and fair dealing and facilitates negotiation and adjudication, which are important professional functions of lawyers....*

*This Section applies equally to statements made to a sophisticated person, such as to a lawyer representing another client,* as well as to an unsophisticated person.

Restatement (Third) of the Law Governing Lawyers § 98 cmt. b (citation omitted) (emphasis added).

Comment c to section 98 also explains that

[t]he law of misrepresentation applies to lawyers. For purposes of common-law damage recovery, reckless as well as knowing misrepresentation by a lawyer may be actionable.... A misrepresentation can occur through direct statement or through affirmation or a misrepresentation of another, as when a lawyer knowingly affirms a client's false

or misleading statement. A statement can also be false because only partially true. If constrained from conveying specific information to a nonclient, for example due to confidentiality obligations to the lawyer's client, the lawyer must either make no representation or make a representation that is not false. Restatement (Third) of the Law Governing Lawyers § 98 cmt. c (citations omitted).

Finally, comment g provides that "[i]n general, *a lawyer who makes a fraudulent misrepresentation is subject to liability to the injured person when the other elements of the tort are established....*" Restatement (Third) of the Law Governing Lawyers § 98 cmt. g.

Clearly, the Restatement takes the position that a lawyer who makes fraudulent misrepresentations to a nonclient, including a lawyer representing another client, is subject to liability when the other elements of that tort are satisfied. There are numerous cases that support this proposition. *See, e.g.,* 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 6.7, 564–66 n. 1 (5th ed.2000) (citing cases from twenty-eight states holding that "[a]n attorney can be liable to a nonclient, even an adversary in litigation, for fraud or deceit.").

However, these cases generally tend to involve circumstances where an adverse nonclient party in a transaction sues the attorney who made the fraudulent misrepresentations. Here, the adverse nonclients have not sued the attorney who made the fraudulent misrepresentations. Rather, the nonclients have sued their own attorneys who represented them in the transaction. Those attorneys in turn are seeking indemnity from the attorney who made the fraudulent misrepresentations.

As mentioned, however, the Restatement recognizes that section 98 "applies equally to statements made to a sophisticated person, *such as to a lawyer representing another client,* as well as to an unsophisticated person." Restatement (Third) of the Law Governing Lawyers § 98 cmt. b (emphasis added). If there can be a basis for liability when the injured lawyer sues the defrauding lawyer directly, we see no reason why the rule should not be the same where the injured lawyer sues the defrauding lawyer for indemnity. In fact, one law treatise recognizes as hornbook law the principle that "one who is ... induced to act by the misrepresentations of [a]nother, is entitled to indemnity for recovery by a third party." *See* W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 51, at 342 (5th ed.1984).

Because of confidentiality prohibitions, a lawyer may generally refuse to provide information without breaching any duty. However, once the lawyer undertakes to provide information, that lawyer has a duty to provide the information truthfully. *Cicone v. URS Corp.,* 183 Cal. App.3d 194, 202, 227 Cal.Rptr. 887, 891 (1986) (holding that "a duty is owed by an attorney not to defraud another, even if that other is an attorney negotiating at arm's length").

The facts in *Cicone* are strikingly similar to the facts here: A law firm that was a defendant in a malpractice action filed a cross-complaint against the buyer of the law firm's former clients' business and the buyer's lawyer. The court recognized that the defrauded lawyer had a claim for equitable indemnity against the defrauding lawyer. *Id.* at 213, 227 Cal.Rptr. at 899; *see also Scott v. Francis,* 314 Or. 329, 334, 838 P.2d 596, 599 (1992) (recognizing defrauded lawyer had indemnity claim against defrauding lawyer).

We hold that once a lawyer responds to a request for information in an

arm's-length transaction and undertakes to give that information, the lawyer has a duty to the lawyer requesting the information to give it truthfully. Such a duty is an independent one imposed for the benefit of a particular person or class of persons. We further hold that a breach of that duty supports a claim of equitable indemnity by the defrauded lawyer against the defrauding lawyer. The district court erred in concluding otherwise.

Public policy favors a duty, running from an attorney representing a party to a commercial transaction, not to make fraudulent misrepresentations to an attorney representing the adverse party in the transaction. As the Restatement notes, "[c]ompliance with those obligations [to not knowingly make false misrepresentations of material law or fact] meets social expectations of honesty and fair dealing and facilitates negotiation and adjudication, which are important professional functions of lawyers." Restatement (Third) of the Law Governing Lawyers § 98 cmt. b.

Similarly, in *American Family Services Corporation v. Michelfelder*, where the buyers sued the seller's attorneys for fraudulent misrepresentation, the court commented on the importance of a lawyer's honesty and trustworthiness in commercial transactions:

> If [the buyer] could not rely on ... representations [of the seller's attorneys], then [the buyer] would have to constantly contact the [sellers] to negotiate the transaction. As a result, the [sellers] would be distracted from running their business. One of a lawyer's most marketable assets is that the lawyer's expertise of legal nuances frees the client to focus on business matters while the lawyer handles legal matters. If, however, adverse parties cannot rely on the lawyer's representations, then the

lawyer's benefit to the client diminishes, since the adverse party will understandably want to collect information from a reliable source and not from an unaccountable attorney.

968 F.2d 667, 674 (8th Cir.1992).

**B. Active–Passive Liability.** Before concluding, we address Kennedy's fall-back contention that we should not permit indemnity here because the Anderson defendants are really asserting a theory of active-passive liability, which this court has abandoned as a ground for indemnity.

The active-passive theory was premised on the principle that at least two parties must be negligent. *Auto Underwriters Corp. v. Harrelson*, 409 N.W.2d 688, 692 (Iowa 1987). The theory developed as a mechanism to avoid the harsh result that would sometimes occur from application of the rule that an indemnity claimant must be free from fault or negligence to recover. This court adopted the theory when contribution or apportionment between joint tortfeasors was not available. *See Rees v. Dallas County*, 372 N.W.2d 503, 506 (Iowa 1985). This court perceived the active-passive theory as "an extreme form of contribution," *Iowa Power & Light Co. v. Abild Construction Co.*, 259 Iowa 314, 323, 144 N.W.2d 303, 309 (1966), and in a sense, the theory "was a precursor of modern systems of comparative fault because it attempted to transfer ultimate legal liability to the defendant truly in the wrong," *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501 (5th Cir.1982).

Here, as the Anderson defendants point out, they are not alleging negligence on the part of Kennedy. Rather, they are alleging fraudulent misrepresentation—an intentional tort. Therefore, they conclude, their claim for indemnity cannot be said to

be premised on the theory of, or characterized as, active-passive negligence.

The Anderson defendants make a good point. In *Fleming v. Threshermen's Mutual Insurance Co.*, the court was faced with the issue of "whether a negligent tortfeasor has a right to indemnity or contribution from an intentional joint tortfeasor." 131 Wis.2d 123, 124, 388 N.W.2d 908, 909 (1986). In holding that such a right of indemnity exists, the court explained:

> [W]e have continued to uphold the rule that those guilty of intentional misconduct are not entitled to contribution. This ... is consistent with our decision ... that an intentional wrongdoer should not benefit from the contributory negligence of a plaintiff.
>
> Recognizing the correctness of these decisions, we hold that a negligent tortfeasor has a right to indemnity from an intentional joint tortfeasor. Were we to allow a negligent tortfeasor only a right to contribution from an intentional joint tortfeasor, the intentional tortfeasor effectively would receive the benefit of contribution from the negligent tortfeasor, in direct conflict with the established law in this state. While this approach allows a defendant who is causally negligent to escape from liability in some circumstances, we believe that shifting the full responsibility for the loss to the intentional tortfeasor serves the policy of deterring conduct which society considers to be substantially more egregious than negligence.

*Id.* at 910–11 (citations omitted).

■ Similarly, we have held that Iowa Code chapter 668—Iowa's comparative fault chapter which establishes the right to contribution—"does not cover fraud actions." *Freeman v. Ernst & Young*, 516 N.W.2d 835, 837 (Iowa 1994). Therefore, as the Wisconsin court in *Fleming* con-cluded, to limit a negligent tortfeasor to only a right of contribution against an intentional tortfeasor would, in effect, amount to the intentional tortfeasor receiving the benefit of contribution from the negligent tortfeasor. Such a result is inconsistent with our comparative fault statute and our cases that do not allow contribution where fraud is involved. Additionally, as the Wisconsin court also concluded, "shifting the full responsibility for the loss to the intentional tortfeasor serves the policy of deterring conduct which society considers to be substantially more egregious than negligence." *Fleming*, 388 N.W.2d at 911.

■ We conclude that the indemnity theory of active-passive liability does not apply here. We further conclude that Iowa Code chapter 668 does not undermine the Anderson defendants' ability—as alleged negligent tortfeasors—to pursue an indemnity action against Kennedy—an alleged intentional tortfeasor.

## VI. Disposition.

In sum, we conclude the Anderson defendants have a viable claim of equitable indemnity against Kennedy on the theory of breach of independent duty. The district court erroneously concluded otherwise. We therefore reverse the summary judgment ruling and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**