[Civ. No. 2997. Fourth Dist. Nov. 16, 1942.]

Estate of ALICE SHUTE, Deceased. WILLIAM L. SMITH et al., Respondents, v. AGNES S. DAVISON et al., Defendants; KATHERINE VANDELL et al., Appellants.

Harry M. Gross and Hugh E. Brierly for Appellants.

Jos. H. Huberty, George Francis and Virgil M. Airola for Respondents.

BARNARD, P. J.—This is an appeal from an order denying admission of a will to probate and decreeing that the deceased died intestate.

On August 3, 1930, Alice Shute made a will in which she left to Otie Shute, the brother of her deceased husband, "Twenty-five Dollars a month while he needs it" and all the rest of her estate to her three sisters and her brother, Alexander Smith. On the same day, she handed the will to her sister, Agnes Davison, with a request that she keep the will for her. This will remained in Agnes Davison's possession until after Mrs. Shute's death. On August 30, 1937, Mrs. Shute executed a second will in which she gave to Otie Shute "$25 during his life"; $300 to two nieces of her deceased husband; $300 to two nephews of her deceased husband; to Norma Donnallan "all of my Fortuna Property income"; to Alice Vandell "my diamond ring"; "To my brother Alexander Smith $25 per month during his life time"; and all the rest of her estate to her three sisters. This will contained no express revocation clause and it named Dora Collins as "my executor." Mrs. Collins testified that on May 5, 1939, the decedent showed her the original of this will, declared it to be her last will and testament, and requested her to make a copy thereof, which she did. The original of this will was not found after Mrs. Shute's death. Agnes Davison testified that in August, 1940, the decedent asked her if she still had the will of August 3, 1930. She replied that she did, whereupon the decedent said nothing further. Mrs. Shute died on December 28, 1940, leaving an estate of the value of about $76,000.

The first will was offered for probate and Dora Collins filed a petition for probate of the second will as a lost will. Various contests were filed and the several matters were consolidated for hearing. The court found that each of these wills was entirely written, dated and signed by the deceased; that the first of these wills was entirely superseded and completely revoked by the second; that the second will was burned or destroyed by the decedent in her lifetime with the intent and for the purpose of revoking the same but that this act did not revive or restore the first will; and that the second will was not intended to be amendatory of or a codicil to the first will. As conclusions of law the court found that both wills were revoked by the deceased prior to her death and that Mrs. Shute died intestate, and the court refused to admit either will to probate. This appeal followed, being based upon a bill of exceptions.

The question here presented is whether the first of these

wills was revoked by the execution of the second, under the provisions of section 72 of the Probate Code, which read:

"A prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the prior will. In other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will; . . . ."

The specific question is whether the second will contains provisions which are wholly inconsistent with the terms of the prior will.

The respondent relies particularly on *Estate of Iburg*, 196 Cal. 333 [238 P. 74], and *Estate of Danford*, 196 Cal. 339 [238 P. 76]. In each of these cases the two wills in question were both in existence and were both offered for probate. In the Iburg case the first will left the entire estate to a friend of the deceased and appointed him as executor. The second will left the entire estate to the deceased's sister but named no executor and contained no revocation clause. It clearly appeared that the second will, giving the entire estate to the sister, was wholly inconsistent with the first will, giving the same property to the friend, except for the fact that the first will named an executor while the second did not, and this fact was held immaterial to the controversy. In effect, the court held that the provisions of the second will were wholly inconsistent with those of the first will and that the earlier will was revoked by the later one under the provisions of section 1296 of the Civil Code, which are now found, substantially, in section 72 of the Probate Code. While the court also approved and applied the rule that "the complete disposition contained in the second must, unless controlled by the context, wholly revoke the first" this cannot be taken as holding that a complete disposition of a decedent's property in a second will necessarily serves to wholly revoke a first will under other facts and circumstances. In the Danford case, the earlier will, after some minor bequests, left one-fourth of the estate to the decedent's sister and one-half to a Mrs. Mason, making no disposition of any possible residue. The second will, after a specific bequest of $2,000, gave $5,000 to the decedent's sister and all of the rest of the estate to Mrs. Mason. Both wills were offered for probate and the trial court admitted the second will alone, finding that it was the last will of the deceased. This was affirmed on appeal, the court saying that there was nothing

in the context of the two wills of such compelling force as to require them to be construed as one document, and that on the facts found and the record brought up it could not say, as a matter of law, that the judgment was incorrect. In that case, the court further said:

"The governing principle is, therefore, the intention of the testator. It does not necessarily follow from the fact of the new will that full and entire revocation was intended. The purpose may have been to make supplemental provisions, consistent with the former will in whole or in part, to dispose of other property, or to amend and alter the prior dispositions only. Hence a complete revocation by implication will not follow unless the general tenor of the later will shows clearly that the testator so intended, or the two instruments are so plainly inconsistent as to be incapable of standing together."

Expressions may be found in a number of cases in this state to the effect that an earlier will is revoked by a later will which makes a complete disposition of the decedent's property. For example, in *Estate of Martin*, 31 Cal.App. 2d 501 [88 P.2d 234], it is said: "It is the law of California that if the later writing purports to make disposition of all of decedent's property, the earlier instrument is deemed to be wholly revoked." However, the mere fact that the second will makes a complete disposition of the property cannot be taken as the controlling factor in all cases. As the appellant suggests, we may suppose a case where both wills contain identical language and dispose of the entire estate to the same persons. To hold that the second will revoked the first merely because it disposed of all of the property would be directly contrary to the provisions of section 72 of the Probate Code, under which provisions the first will would not be revoked. In such a case the second will would usually be given effect not because it made a complete disposition of the property, but because it was the *last* will. Without reviewing all of the cases cited, it may be observed that apparent inconsistencies appearing in the language used in some of these cases are explained if it be kept in mind that in many cases where both wills are offered for probate the controlling factor is not whether a revocation results from inconsistent provisions in the second will, but it is the fact that the second will is the last will of the decedent. Of course, a valid second will making a complete disposition of the property and which is offered for probate

usually supersedes a prior will, and this whether or not its terms are inconsistent with those of the prior will in whole or in part.

In other cases a question is presented as to whether both of two existing wills should be accepted as constituting the last will of the deceased, with an appropriate adjudication with respect to any conflicting portions. In such cases, it may be necessary to decide whether the second will is so wholly inconsistent with the first will as to constitute, under the terms of the statute, a revocation of the first, in which event it alone constitutes the last will. In deciding that question the fact that the second will provides a complete disposition of the testator's property may be an important consideration, but it is not necessarily controlling.

A different situation is presented in the instant case where both wills purported to make a complete disposition of the decedent's property and where it appears, without conflict, that the second will was later destroyed by the decedent with the intent to revoke the same. It is not a question of whether the act of revoking the second will served to revive or restore the first one, but of whether the act of executing the second will in and of itself had the effect of revoking the first will. Since there was no express revocation in the second will, this depends entirely upon the operation and effect of section 72 of the Probate Code under these circumstances. That section clearly provides that a prior will is not revoked by a subsequent will unless the latter contains provisions which are wholly inconsistent with those of the former. In this case, while there was some inconsistency between the provisions of the two wills, those of the latter were not wholly inconsistent with those of the former. The first will gave $25 a month to Otie Shute "while he needs it" and gave the balance of the estate to the three sisters and a brother of the decedent. The second will probably intended a similar provision for Otie Shute, with the period for payments possibly extended by the words "during his life," instead of "while he needs it." After four relatively small bequests the second will then gave the balance of the estate to the same brother and three sisters who were to receive it under the first will, although this was altered to the extent that the brother was to receive $25 per month during his lifetime and the remainder was given to the three sisters. It thus appears that each of the two wills gave the bulk of

the estate to the decedent's three sisters, and that the three sisters received property of substantially the same value under each will, although the exact amount might vary slightly, depending upon how long the brother and brother-in-law lived. Generally speaking, the provisions of the second will were not inconsistent with those of the first insofar as nearly three-fourths of the estate is concerned. It further appears that the second will gave to the three sisters of the decedent exactly what they would have received if the provisions of that will had been drafted in the form of a codicil to the first will. Under circumstances very similar to those which here appear the Supreme Court, in *Estate of Schnoor*, 4 Cal.2d 590 [51 P.2d 424], affirmed an order admitting a first will to probate where a second will had been executed and later destroyed. In that case the court said: "In other words, the second will gave to Mrs. Vinson exactly what she would have received if the new provisions had been drafted in the form of a codicil to the first will. Therefore, we think that the second instrument was in effect a codicil and that its execution did not revoke the first will. It is our opinion that if the second will had not been destroyed, it would have operated as a codicil to the first. (Probate Code, §§ 72, 101, 102, 103.)"

The second will here in question was labeled "Last Will of Alice C. Shute" and it did not state therein that it was intended as a codicil to the prior will. Regardless of the terms used its real effect was to amend the provisions of the earlier will, and while it made certain changes, additions and alterations in the manner of distribution provided in the first will, it kept the larger part of those provisions intact and left the larger part of the estate to the same persons and in the same manner as in the first will. There is no evidence to sustain the court's finding or conclusion that the second will was not intended to be amendatory of or a codicil to the first will. Not only was the second instrument in effect a codicil, but under the provisions of section 72 of the Probate Code its execution did not revoke the first will. (*Estate of Schnoor, supra.*) This being true, and no other testamentary instrument having been left in force and effect by the deceased, the first will should have been admitted to probate. Even where the case is doubtful, as was said in *Estate of Iburg, supra*, ". . . the courts incline to preserve the contents of the prior will, wholly or in part, rather than

declare a total revocation by inference." The decedent having intentionally revoked an instrument which was in practical effect a codicil, no inconsistency remains which nullifies any part of the first will and the same should be accepted as the last will of the decedent.

The order appealed from is reversed, and the lower court is directed to proceed in accordance with the views herein expressed. The appellants to recover costs on appeal.

Marks, J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied January 14, 1943. Traynor, J., voted for a hearing.