OPINION
On October 21, 1976, the decedent executed an eight-page typewritten will with all of the formalities required by statute. Appellant Bockin's name appeared in that will six times in connection with dispositive provisions whereby she was to receive a specific bequest of decedent's personal effects, rent-free use of premises, and she was to be the income beneficiary of a testamentary trust with the trustee having power of invasion for her benefit. The remainder interest in the trust was to be distributed to Braille Institute of America, Inc. (respondent Braille) on appellant's death. This will was offered for probate by both Security Pacific National Bank, the nominated executor, and by respondent Braille.
On January 13, 1977, decedent executed a typewritten three-page "First Codicil to Will of Henry Richard Hering" (First Codicil) with all of the formalities required by statute. The First Codicil referred to the six specific articles of the will containing appellant Bockin's name and amended those articles by deleting appellant's name and inserting the words "Evelyn Salib." The First Codicil also expressly confirmed and republished the will in all other respects. The First Codicil was also offered for probate by respondent Braille.
On December 2, 1977, in the presence of his attorney and with intent to revoke the First Codicil, decedent made a large X through all of the writing on each page of the First Codicil and wrote the words, "Revoked December 2, 1977 Henry R. Hering" on each page of the First Codicil. Those X's, words, and dates are all hereafter referred to as "the December writings." Respondent Braille offered the December writings for probate as a codicil. *Page 91 
The attorney who prepared the First Codicil testified that shortly before creating the December writings, the decedent stated that he thought that the X's would reinstate the provision of the original will, planning a life estate to Elaine Bockin in place of Evelyn Salib. The trial court thereafter struck that testimony ruling that such testimony of the testator's intent is inadmissible.
The trial court found (1) the First Codicil was obliterated by crossing out all three pages of the First Codicil and concluded that the First Codicil was revoked thereby, (2) since each of the three pages was marked by the language "Revoked December 2, 1977 Henry R. Hering," the decedent intended that language to serve an additional way of assuring that the First Codicil was revoked and the language was not intended by decedent to create another codicil. It, therefore, denied probate to that language of revocation as a codicil.
The trial court applied the antirevival provisions of Probate Code section 75,[1] and found that it did not appear that in creating the December writings the decedent intended to revive or give effect to the bequests to appellant Bockin in the will and concluded that the revocation of the First Codicil did not reinstate the bequests, revive the bequests, or republish the will.
The court then concluded that the whole of the will, except the words "Elaine Rose Bockin," should be admitted to probate as though no reference had ever been therein to Elaine Rose Bockin or Evelyn Salib. By such findings and conclusions, the specific bequests of personal property and (except for the disposition to respondent Braille on termination of the trust) all of the trust provisions covering five of the seven pages of dispositive provisions of the will were rendered inoperative.
Appellant Bockin appeals from the portions of the order deleting her name from the will as submitted to probate and from the order denying the December written language into probate as a codicil. *Page 92 
(1a) Appellant Bockin makes two contentions: first, she contends that the antirevival provisions of section 75 do not apply in the case of a revoked codicil which itself does not revoke an entire will; second, she argues that even if the antirevival provisions of section 75 do apply herein, there was a revival of the original will since the December writings are a valid holographic instrument, constitute a codicil and therefore republish the original will. Since we agree with appellant's first contention, we do not find it necessary to consider her second contention.
 DISCUSSION
The common law rule is that revocation of a codicil leaves the will in force and effect as written. (Matter of Simpson (1878 N Y Surr.) 56 How. Pr. 125; Ferrier, Revival of a Revoked Will
(1940) 28 Cal.L.Rev. 265, 269.)
"The common law of England, so far as it is not repugnant to or inconsistent with the . . . laws of this State, is the rule of decision in all the courts of this State." (Civ. Code, § 22.2)
(2) Consistent with Civil Code section 22.2 "`Statutes are not presumed to alter the common law otherwise than the act expressly provides'" (Saala v. McFarland (1965) 63 Cal.2d 124, 130 [45 Cal.Rptr. 144, 403 P.2d 400]) and "where the code is silent, the common law governs" (Estate of Apple (1885) 66 Cal. 432, 434 [6 P. 7]). "`[T]he common law is not repealed by implication or otherwise, if there is no repugnancy between it and the statute, and it does not appear that the legislature intended to cover the whole subject'" (Gray v. Sutherland
(1954) 124 Cal.App.2d 280, 290 [268 P.2d 754]).
Our antirevival statute was adopted, in substantially its existing form, during the state's first legislative session (Stats. 1850, ch. 72, § 11) and it is presumed that in enacting statutes in 1850 the Legislature was familiar with the relevant rules of the common law. (Keeler v. Superior Court (1970)2 Cal.3d 619, 625 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) Although we have no committee reports of California's first legislative session in 1850, our antirevival statute is directly traceable to New York's former statute (28 Cal.L.Rev. 266-267) and California Statutes 1850, chapter 72, section 11, was identical to the former New York antirevival statute. *Page 93 
(1b) Given California's common law background, the burden is on respondent to establish that the provisions of section 75 apply in the case of a revocation of a codicil. Otherwise, the common law rule, that revocation of a codicil leaves the original will intact, still prevails in this state.
In an effort to meet its burden in establishing that the provisions of section 75 apply in the case of revocation of a codicil, respondent Braille argues that the word "codicil" should be read into section 75 because Civil Code section 14, subdivision (5) states "The word `will' includes codicil."
The argument that the word "codicil" should be read into the antirevival statute in place of "will" was rejected in Matter ofSimpson, supra, at page 131, under similar facts and statutes. In Matter of Simpson, supra, the testator had executed an 1871 will, leaving most of his property to his wife, and made an 1872 codicil, giving approximately $50,000 to third parties, which he revoked in 1876. The contestants, seeking to invalidate the 1871 will, argued that because New York law (N.Y. Stat. of Wills (6th ed.) § 103 (1829)) provided that the term "will" included "codicils," the court should read the word "codicil" into the then existing New York antirevival statute (N.Y. Stat. of Wills (6th ed.) § 51 (1820)) which was then similar to ours, and provided "If after the making of any will the testator shall duly make and execute a second will, the destruction, cancelling, or revocation of such second will, shall not revive the first will, unless. . . ."
In rejecting the contention of the contestants, the court refers to the legislative history in New York which indicated that although the statute changed the common law with respect to "wills," it was not intended to apply in the case of a revocation of a codicil to a will.[2] *Page 94 
Matter of Simpson's logic is both compelling and consistent with the language of our statutes and California holdings that a will and codicil to it are "one in legal effect" (Estate ofDubois (1949) 94 Cal.App.2d 838 [211 P.2d 895]) and that "`[a] codicil is part of a will to which it is attached or referred, and both must be taken and construed together as one instrument.'" (Estate of Cazaurang (1941) 42 Cal.App.2d 796, 798 [110 P.2d 138].)
Matter of Simpson is a well-reasoned decision, concisely stating the common law rule, that revocation of a codicil leaves the will in force and effect; that the legislative history of the New York antirevival statute (on which California's is based) indicates that the draftsmen had no intention to change the common law with respect to revocation of a codicil leaving the will in force as originally written.
Lacking authority for making the word "will" synonymous with "codicil," respondent Braille argues that the terms must by synonymous because it has always been assumed that sections 50 and 53[3] govern the validity of codicils even though the word "codicil" does not appear in either section. Application of sections 50 and 53 to codicils does not rest on any assumptions, however. Application of sections 50 and 53 to codicils comes from section 74, subdivision (1) which provides, in relevant part, that a will may only be altered "[b]y a written will, or other writing of the testator . . . executed with the same formalities required for the execution of a will." Accordingly, sections 50 and 53 apply to codicils because they define the formalities required for the execution of a will. *Page 95 
As a practical matter, respondent's position simply cannot be maintained without judicial legislation revising section 75 to include words that are not in the statute to make it read similar to the current New York statute, which now provides in relevant part, "If after executing a will the testator executes a later will which revokes or alters the prior one, a revocation of the later will does not, of itself, revive the prior will or anyprovision thereof." (N.Y. Est., Powers Trusts, § 3-4.6(a); N Y Laws 1967, ch. 686, § 25, amending N.Y. Dec. Est. Law, § 41). Current New York law is also that "Unless the contextotherwise requires, the term `will' includes a `codicil'" (N Y Est., Powers Trusts, § 1-2.18(b); N.Y. Laws 1967, ch. 686, § 5).
In effect respondent Braille would have this court read our section 75 as if it read: "If after making a will, the testator makes a second will, or a codicil to the first will, the destruction or other revocation of the second will, or a codicilto the first will, does not revive the first will, or theportion of the first will revoked by the codicil, unless it appears by the terms of such revocation that it was the intention to revive and give effect to the first will, or the portion ofthe first will revoked by the codicil, or unless after such destruction or other revocation, the first will, or the portionof the first will revoked by the codicil, is duly republished."
We reject such a construction of section 75 Had the Legislature intended that the antirevival statute apply in the case of a codicil which did not revoke an entire will, it would have included the necessary language to insure fulfillment of that intention. This is particularly true in light of the fact that the common law is that revocation of a codicil does ipso facto revive the revoked portion of the will. *Page 96 
Simpson is also consistent because the only two California cases considering the issue of partial revocation by codicil were similarly decided. In the earliest of those cases, Estate ofSchnoor (1935) 4 Cal.2d 590 [51 P.2d 424], the decedent made a 1930 will by which she bequeathed "all my real and personal property" to Evelyn Vinson, executed a holographic document in 1932 providing for several specific bequests to third parties with the residue to go to Evelyn Vinson, and subsequently destroyed the second document with intent to revoke. The trial court admitted the original 1930 will to probate, as written, and on appeal by two contesting heirs our Supreme Court affirmed the order admitting the original 1930 will to probate, as written, holding that the revoked 1932 holograph was a codicil and therefore did not revoke the will. Had the court determined that section 75 applied to partial revocations by codicil, it would have necessarily had to determine that the 1930 will was inoperative as to the specific bequests in the 1932 holograph which lapsed when it was revoked and that the items included in the specific bequests passed by intestacy to the two contesting heirs.
A similar result was reached in Estate of Shute (1942)55 Cal.App.2d 573 [131 P.2d 54]. In Estate of Shute, the decedent made a 1930 will, leaving an annuity to her husband's brother, with the residue to her sisters and her brother. In 1937, she executed a second will, containing no express revocation of the first, altering the prior annuity, making a number of bequests to third parties, and leaving the residue to her sisters alone. Subsequently, she revoked the second will, and the trial court refused to admit the first will to probate on the grounds that it had been revoked by the later will. On appeal by proponents of the 1930 will, the appellate court reversed, and directed the admission of the 1930 will to probate as written, holding at pages 578-579: "Regardless of the terms used its [the second will's] real effect was to amend the provisions of the earlier will, and while it made certain changes, additions and alterations in the manner of distribution provided in the first will, it kept the larger part of those provisions intact and left the larger part of the estate to the same persons and in the same manner as in the first will. There is no evidence to sustain the court's finding or conclusion that the second will was not intended to be amendatory of or a codicil to the first will. Not only was the second instrument in effect a codicil, but under the provisions of section 72 of the Probate Code its execution did not revoke the first will (Estate of Schnoor, supra). This being true, and no other testamentary instrument having been left in force and effect by the deceased, the first will should have been admitted to probate. . . . The decedent having intentionally revoked an *Page 97 
instrument which was in practical effect a codicil, no inconsistency remains which nullifies any part of the first will and the same should be accepted as the last will of the decedent."
Both Estate of Shute and Estate of Schnoor, supra, cited and discussed Estate of Iburg (1925) 196 Cal. 333 [238 P. 74], and Estate of Danford (1925) 196 Cal. 339 [238 P. 76]. Although neither Estate of Danford nor Estate of Iburg involved section 75, since the issue in those cases was whether one or both of two existing wills was to be admitted to probate, both distinctly referred to the difference between the effect of a codicil in revoking a will and the effect of a subsequent will, indicating that it was only the latter that would revoke a will (Estate of Iburg, supra, at pp. 334-335, 336; Estate ofDanford, supra, at pp. 341-342, 343). That the courts in Shute
and Schnoor placed great emphasis on this distinction is shown in the holdings themselves, and the court in Schnoor said ofIburg and Danford, "The two decisions last mentioned contain very full statements of the law pertaining to the matter before us, and fairly illustrate the questions arising in the present case." (Estate of Schnoor, supra, 4 Cal.2d at P. 593.)
Respondent argues that neither Estate of Shute nor Estate ofSchnoor addressed or resolved the issue of whether revocation of a codicil which revoked a portion of a previous will automatically revived the revoked portions of the previous will.
Estate of Shute and Estate of Schnoor are not predicated upon automatic revival, but upon application of sections 72[4]
and 75 to a "will" in accordance with their express terms.
Since neither "codicil" in Estate of Shute nor Estate ofSchnoor contained an express revocation, those courts had to, and did, expressly address the issue of partial revocations to determine whether the "codicils" were wholly inconsistent with the wills. Without either an express revocation or wholly inconsistent provisions in the codicils, the wills were never revoked under section 72 and section 75 had no application. *Page 98 
(Estate of Schnoor, supra, at pp. 591-592; Estate of Shute,supra, at P. 577.)
After carefully analyzing the documents, the court in Estateof Schnoor admitted the will to probate, even though the effect of the codicil, if unrevoked, was to partially revoke the bequest of "all property" in the will. Likewise, in Estate of Shute,
the original will was admitted to probate, even though the effect of the "codicil," if unrevoked, was to partially revoke the residuary bequest to the sisters, and totally revoke the residuary bequest to the brother.
The difference between the result respondent seeks and the actual results in Estate of Shute or Estate of Schnoor is that the court applied sections 72 and 75 to a will rather than engage in judicial legislation to amend these sections to apply to parts of wills.
Respondent also argues that some different rule than that expressed in Estate of Shute and Estate of Schnoor would apply if there were an express revocation of a bequest by codicil which is subsequently revoked, but even if this were true, the "revocation" in the case at bar was no more "express" than the revocation in Estate of Shute and Estate of Schnoor.
In both Estate of Shute, supra, at page 577, and Estate ofSchnoor, supra, at page 591, the courts stated there was no express revocation, so that term must imply the direct use of words of revocation. However, the addition of words such as "I am expressly revoking my will to the extent I am making changes in this codicil (italics added to distinguish express revocation of a will under Prob. Code, § 72) to the "codicils" in Shute,Schnoor, and the case at bar would add nothing since revocation has already been accomplished by implication in the codicil. To make a distinction based upon an express versus an implied revocation is to elevate form over legal substance, and to ignore that either type of revocation is equivalent under section 72 with respect to the revocation of a "will." It therefore appears that respondent seeks an additional form of judicial legislation that would make sections 72 and 75 apply to "bequests" even though their express language applies to a "will," and even though it would be inconsistent with the holding in both Estateof Schnoor and Estate of Shute, where the original bequests survived revocation of the "codicils." *Page 99 
Finally, even if respondent's argument concerning revocation of "bequests" were limited to completely revoked bequests, it cannot stand when compared to Estate of Shute, supra, where the codicil, if unrevoked, would have, among other things, completely revoked the brother's residuary bequest.
Although respondent has cited New York cases which are in conflict with Matter of Simpson, Estate of Shute, and Estateof Schnoor, supra, none of the New York cases are based upon a reconciliation of the New York antirevival statute with a statute similar to California's section 72, as was done by our courts inEstate of Shute, supra, and Estate of Schnoor, supra. In addition, as we have indicated, New York amended its antirevival statute to make it clearly applicable to revocations and alterations.
Unlike New York, California has not adopted legislation which would change the holdings of Estate of Shute and Estate ofSchnoor, supra, to the effect that our section 75 applies only to a revoked will, rather than a portion of a will.
The order is reversed with directions to admit the will of October 21, 1976, as originally written and executed.
Files, P.J., and Woods, J., concurred.
A petition for a rehearing was denied August 6, 1980, and the petition of respondent Braille Institute of America, Inc., for a hearing by the Supreme Court was denied September 4, 1980.
[1] Probate Code section 75 reads as follows: "If, after making a will, the testator makes a second will, the destruction or other revocation of the second will does not revive the first will, unless it appears by the terms of such revocation that it was the intention to revive and give effect to the first will, or unless, after such destruction or other revocation, the first will is duly republished."
Unless otherwise indicated, all section references hereafter are to the Probate Code.
[2] The court held: "This does not seem to be the true construction to be placed upon these sections. The declarations in the one hundred and third section is not that the term will, shall be synonymous with that of codicil, and hence that whenever used in that chapter it could be replaced by the term codicil and the meaning preserved, but it simply provides that in the term will, shall be embraced all codicils to a will, so that wherever the word will is used it shall have the same effect as if it had been written `a will and all codicils to it' to avoid the necessity of a repetition.
"It would be doing violence to the language of section fifty-one to hold that the phrase `second will' shall be construed to mean in any case simply a codicil to the first will. It evidently refers to a testamentary instrument which assumes to dispose of the testator's entire estate, and not to an instrument which is merely an addition or supplement to a former will; and which has no legal entity independent of the existence of the latter. This is the view taken by the reporter in a foot note toSimmons agt. Simmons (26 Barb., at page 76), where he says, referring to this very section.
"`The revisers here manifestly use the word "will" (unqualified) as ex vi termini, meaning a complete disposition of the testator's whole property and therefore any second one is necessarily a revocation of any former will.' If this is so then the rule of the common law is still in force in this state, which holds that the destruction of a codicil which only by implication revoked a former will in part by reason of inconsistent provisions, does, ipso facto, revive the revoked portions of the will (Powell on Dev., 549; Perkins, sec. 479; 4 Burr,
2512; 1 Redfield on Wills, pp. 375-77).
"And so, in the present case, the destruction, by the testator, of the codicil of 1872 would leave the will of 1871 in full force and effect to the same extent as if the codicil had never been executed."
[3] Section 50 provides as follows: "Every will, other than a nuncupative will, must be in writing and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:
"(1) Subscription. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto. A person who subscribes the testator's name, by his direction, should write his own name as a witness to the will, but a failure to do so will not affect the validity of the will.
"(2) Presence of witnesses. The subscription must be made, or the testator must acknowledge it to have been made by him or by his authority, in the presence of both of the attesting witnesses, present at the same time.
"(3) Testator's declaration. The testator, at the time of subscribing or acknowledging the instrument, must declare to the attesting witnesses that it is his will.
"(4) Attesting witnesses. There must be at least two attesting witnesses, each of whom must sign the instrument as a witness, at the end of the will, at the testator's request and in his presence. The witnesses should give their places of residence, but a failure to do so will not affect the validity of the will."
Section 53 provides as follows: "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed. No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will."
[4] Section 72 provides as follows: "A prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the prior will. In other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will; but the mere naming of an executor in the prior will need not be given effect by the court when the subsequent will is otherwise wholly inconsistent with the terms of the prior will, the intention of the testator in this respect being left to the determination of the court." *Page 100